UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

BILLY ROGERS,
    Plaintiff,

vs.

OFFICER SHOSTAK, et al.,
    Defendants.

Case No. 1:14-cv-213

Barrett, J.
Litkovitz, M.J.

**ORDER AND REPORT
AND RECOMMENDATION**

Plaintiff, an inmate formerly incarcerated at the Warren Correctional Institute (WCI), filed this action pro se under 42 U.S.C. § 1983 against defendant Officer Shostak, a correctional officer at WCI, and several other defendants arising out of a use of force episode which allegedly occurred at WCI on September 11, 2013. (Doc. 1). Plaintiff was granted leave to proceed *in forma pauperis*. (Doc. 9). The Court subsequently *sua sponte* dismissed the complaint against all defendants except defendant Shostak and allowed the case to proceed against defendant Shostak on plaintiff's Eighth Amendment excessive use of force claim. (Doc. 36). This matter is before the Court on defendant Officer Shostak's motion for summary judgment (Doc. 58) and plaintiff's response in opposition to the motion (Doc. 62). The matter is also before the Court on the following motions filed by plaintiff: (1) motions to appoint counsel and stay proceedings (Docs. 60, 61, 63, 67); (2) motion to bring plaintiff into Court (Doc. 65); and (3) motion for extension of time to respond to defendant's motion for summary judgment (Doc. 66). Plaintiff has also filed several Notices with the Court seeking various types of relief. (Docs. 62, 64, 68).

**I. Plaintiff's motions to appoint counsel and stay proceedings**

Plaintiff moves the Court to appoint counsel for him on the grounds he suffers from mental illness, he cannot obtain competent legal assistance at SOCF, and he will be unable to work on his case if he is placed in segregation in the future. (Docs. 61, 63). Plaintiff has also filed Notices in

which he asks the Court to appoint counsel for him. (Docs. 62, 68). In the event the Court does not appoint him an attorney, plaintiff requests that this lawsuit be stayed until after he is released from prison in May 2016. (Docs. 60, 61, 67).

For the reasons previously set forth in the Court's Order dated May 12, 2014 (Doc. 27), plaintiff's motions for appointment of counsel are not well-taken. Further, plaintiff has not demonstrated that a stay of this matter for over one year until after his anticipated release date is justified for any reason, and to postpone the lawsuit for that length of time would unduly prejudice defendant. Accordingly, plaintiff's motions for appointment of counsel and motions for a stay (Docs. 60, 61, 63, 67) are **DENIED**. To the extent plaintiff has made requests for appointment counsel in the Notices he has filed (Docs. 62, 68), plaintiff's requests are **DENIED**.

## II. Plaintiff's requests to be brought into Court

Plaintiff has filed a motion (Doc. 65) and Notices (Docs. 62, 64, 68) requesting that he be brought into Court so that he can expose alleged "corrupt violations" committed by WCI and SOCF corrections staff and Ohio Attorney General Mike DeWine, alleged "cover ups" of those violations, and cover ups and threats purportedly related to his claim against Officer Shostak. These matters are not before the Court in this lawsuit. The only matter before the Court is plaintiff's Eighth Amendment claim for excessive force against Officer Shostak. (*See* Docs. 19, 36). Defendant's motion for summary judgment is pending as to that claim. (Doc. 58). Accordingly, plaintiff's motion to be brought into Court (Doc. 65) is **DENIED**. To the extent plaintiff has filed Notices asking that he be brought before the Court (Docs. 62, 64, 68), those requests are likewise **DENIED**.

### III. Plaintiff's request for an order for production of letters

In his Notice filed on April 10, 2015, plaintiff requests that the Court order Ohio Attorney General Mike DeWine to produce all letters plaintiff has sent to Ohio Governor John Kasich and "Gary C. Mohr, Director." (Doc. 68). Plaintiff does not allege how these letters are relevant to this lawsuit. Plaintiff's request for an order for production of letters is **DENIED**.

### IV. Plaintiff's motion for extension of time

Defendant Shostak filed his motion for summary judgment on February 17, 2015. (Doc. 58). On March 13, 2015, plaintiff filed a motion for extension of time until June 7, 2016, to file a response to the motion. (Doc. 66). However, plaintiff filed a response in opposition to the motion for summary judgment with supporting documentation on February 25, 2015. (Doc. 62). Accordingly, plaintiff's request for an extension of time (Doc. 66) is **DENIED** as moot.[1]

### V. Defendant Shostak's motion for summary judgment

#### A. Facts

Defendant Roman Shostak moves for summary judgment on plaintiff's Eighth Amendment claim pursuant to Fed. R. Civ. P. 56 on the grounds there is no genuine issue of material fact and defendant Shostak is entitled to summary judgment as a matter of law. (Doc. 58). Defendant Shostak has submitted his affidavit in support of the motion for summary judgment as well as additional affidavits, documents, and a copy of plaintiff's deposition. (Docs. 57-1, 58-1). Plaintiff has submitted the following documents: a medical request dated February 2, 2014, complaining of chest, foot, back and side pain; a Notification of Grievance dated October 15, 2013, alleging Officer Shostak assaulted him by hitting him in the chest; a disposition of Grievance dated October 21, 2013;

---

[1] The Court notes that although plaintiff alleges as one of the grounds for the extension of time that his eye was seriously injured when an inmate assaulted him on February 27, 2015, plaintiff has been able to prepare and submit to the Court four handwritten motions (Docs. 63, 65, 66, 67) and two Notices (Docs. 64, 68) since that date.

an Inmate Use of Force Statement dated October 15, 2013, alleging Officer Shostak hit him in the chest; a "kite" to the Deputy Warden of Operation dated October 14, 2013, alleging he was hit in the eye by staff while in segregation; kites to the Institutional Inspector dated September 14, 2013, alleging he was hit in the eye on September 12, 2013; a kite to the "Institutional Inspector Special Services" dated July 20, 2014, complaining of a denial of medical care for a number of problems, including pain in the middle of his chest, pain in his back, and foot swelling; a kite to the Deputy Warden of Administration dated July 15, 2014, asking to speak to him in person; a letter complaining of several assaults by officers and inmates; the Decision of the Chief Inspector on a Grievance Appeal dated January 6, 2015, finding plaintiff had received proper medical care; a response dated May 1, 2014, to a letter plaintiff wrote to an Ohio legislative committee; three Informal Complaint Resolutions dated September 2, 2013, complaining of a number of physical ailments; a response dated January 16, 2014, to a letter plaintiff wrote to the Ohio Attorney General's Office; a copy of a letter plaintiff wrote on January 2, 2014, regarding a "Life-Death situation"; responses to requests plaintiff made to various individuals and organizations informing him they could not provide him with legal or other assistance; a Decision of the Chief Inspector on a Grievance Appeal dated December 5, 2014, in response to plaintiff's complaints of kidney, back, and chest pain on inhalation and liver problems; an Informal Complaint Resolution dated October 28, 2013, alleging staff violations; an Informal Complaint Resolution dated December 18, 2013; a kite to Captain Williams dated December 30, 2013, alleging threats against plaintiff; a Health Services Request form dated January 1, 2015, complaining of a cold, sore throat, chest pain, and back pain; a December 2014 medical request; a Nursing Assessment dated January 2, 2015; a Medical Exam Report dated February 10, 2014, assessing plaintiff after a pepper spray incident; a Nursing Assessment dated January 2, 2015, which

noted that plaintiff had just been seen by a physician for all of his medical complaints; a Nursing Assessment for chest pain dated January 11, 2014, which notes that plaintiff complained of chest pain when taking a deep breath which just started that day and which indicated that he was given a rule infraction for lying; Interdisciplinary Progress Notes for the period September 2013 to November 20, 2013; a request to see a dentist dated October 6, 2013; a medical slip stating he was put into segregation on September 12, 2013, and his "self carry" medication was taken away after he was placed on constant watch on September 16, 2013; two Health Services Requests dated September 9, 2013; and an undated statement complaining of a lack of medical attention which is date stamped received "September 05." (Doc. 62, attachments). Plaintiff has not submitted any affidavits or sworn declarations in opposition to the motion for summary judgment.

The Court has gleaned the relevant facts from the parties' submissions. Because many of the facts surrounding the excessive force incident giving rise to this lawsuit are disputed, each party's version of the facts is set forth separately.

*i. Defendant Shostak's version*

On September 11, 2013, defendant Shostak was working as a correctional officer at WCI assigned to Housing Unit 3C, the unit where plaintiff was housed. (Doc. 58-1, Exh. A-1, Declaration of Roman Shostak, ¶ 3). Defendant recalls what happened on that date as follows: Plaintiff was upset and was yelling that he wanted to be let out of his cell for "pill call," which is a notification by the WCI medical unit that certain inmates can proceed to the medical unit to receive prescribed medications. (*Id.*, ¶ 4). Defendant responded to plaintiff's cries by going to plaintiff's cell and opening his cell door in an attempt to talk to plaintiff and calm him down. (*Id.*, ¶ 5). Defendant explained to plaintiff that the pill call notification had not yet been received. (*Id.*). Because

5

defendant as a corrections officer is not permitted to let an inmate out of his cell until he is notified that it is pill call, defendant then shut plaintiff's cell door. (*Id.*). When the actual pill call was made, defendant let plaintiff out of his cell. (*Id.*, ¶ 6). Plaintiff was still agitated and was continuing to yell and voice his displeasure. (*Id.*). Defendant heard plaintiff state at one point, ". . . and his breath smells like alcohol." (*Id.*). Plaintiff then broke away from the pill call group, in violation of institution rules, and went to the Captain's office, where he communicated with someone whose identity defendant does not know. (*Id.*, ¶ 7). There was no physical contact of any kind between plaintiff and defendant on September 11, 2013, and defendant had not consumed any alcohol on that date prior to or during his duties at WCI. (*Id.*, ¶ 8).

    *ii. Plaintiff's version*

Plaintiff gave the following testimony at his deposition: At approximately 4:15 p.m. on September 11, 2013, he and defendant were on the top range and defendant was at another inmate's cell when plaintiff asked, and defendant agreed, to let plaintiff into his own cell. (Doc. 57-1 at 28-29). Plaintiff then asked defendant if he could borrow a pen from another inmate. (*Id.* at 29). "[O]ut of the blue," defendant punched plaintiff "hard" in the chest and told plaintiff, "Get your soft ass off my range." (*Id.* at 29-30). Plaintiff proceeded to the "day room." (*Id.* at 36). At approximately 5:05 p.m., after day room was over, defendant let plaintiff into his cell and locked the door. (*Id.* at 36, 38). After defendant had locked the cell door, plaintiff began hitting the door because defendant would not let him see the medical staff. (*Id.* at 38). Defendant opened the cell door, yelled "I'll beat your fucking ass," and pushed plaintiff back into his bed. (*Id.* at 37). Plaintiff smelled alcohol on defendant's breath. (*Id.*).

6

Pill call subsequently occurred at approximately 6:15 or 6:20 p.m. (*Id.* at 38). Instead of going to get his medications, plaintiff went to the captain's office. (*Id.* at 38-39). Plaintiff told the lieutenant that defendant had just punched him in the chest and plaintiff thought defendant Shostak had alcohol on his breath. (*Id.* at 39). Plaintiff requested to see the medical staff but the lieutenant told plaintiff he was going to have to put him in "the hole" because plaintiff reported that an officer assaulted him. (*Id.* at 39, 41). Plaintiff was not put in "the hole" that day but was escorted back to his cell instead. (*Id.* at 40, 41). Plaintiff also reported the assault the next day to the corrections officer at the desk; the corrections officer called the shift captain, who told plaintiff to talk to Institutional Inspector McGlothen; and Ms. McGlothen had plaintiff write out a Use of Force Statement. (*Id.* at 40-41). After speaking with the shift captain on September 12, 2013, plaintiff spoke with Deputy Warden of Operations Robert Welch at WCI. (*Id.* at 66-68). Deputy Warden Welch told plaintiff that he would look into the matter but he had to attend a meeting and would call plaintiff back after that; however, he never got back to plaintiff. (*Id.* at 67-70).

Plaintiff was never examined as a result of the alleged assault. (*Id.* at 42). Plaintiff requested to go to the medical unit on the day he was punched, but the lieutenant told him to go back to his cell and he would be put in the hole. (*Id.* at 41). On September 12, 2013, the day after the alleged assault, plaintiff was sprayed with OC or pepper spray by corrections officer Armstrong. (*Id.* at 43-44). Following the incident, plaintiff went to the medical unit to be examined. (*Id.* at 44). Plaintiff told the medical staff that he had been assaulted by Officer Shostak. (*Id.*). Plaintiff requested treatment for chest pain from Dr. Timothy Heyd at WCI several days after being punched in the chest and Dr. Heyd informed plaintiff that he did not see any marks or bruises on plaintiff and he saw no

---

[2] Plaintiff testified elsewhere in his deposition that when he was released from his cell to go to pill call on September 11, 2013, plaintiff instead went to the captain's office and told the *captain* what had happened. (*Id.* at 41).

7

reason for x-rays. (*Id.* at 58-61). As a result of being punched in the chest by defendant, plaintiff's chest hurt and plaintiff has "been having chest pains" and pain every time he inhales. (*Id.* at 42, 57).

   *iii. Administrative records*

Plaintiff submitted an Inmate Use of Force Statement on October 15, 2013, reporting a use of force incident that occurred on September 11, 2013, at approximately 7:30 p.m. (Doc. 11 at 2). The statement reads in full:

> Officer Shostak hit me in my chest on 9-11-2013 for no reason whatsoaver [sic] This officer had alcohol on his breath the Lt. on duty got on c/o Shostak My chest still hurts some times I was assaulted by c/o Shostak on 9-11-2013

(*Id.*).

Plaintiff also filed a Notification of Grievance on October 15, 2013. (*Id.* at 1). In the grievance, plaintiff alleged that on the day of the alleged assault, he was out of his cell for day room and defendant was on the range when defendant "hit me in my chest real hard[.]" (*Id.*). Plaintiff alleged that many inmates witnessed the incident and the camera in the block should have recorded the incident. (*Id.*). Plaintiff alleged that the Deputy Warden of Operations "stated he interviewed the camera and did in fact see c/o Shostak hit me." (*Id.*).

Plaintiff filed an Appeal to the Chief Inspector on November 3, 2013. (*Id.* at 4). Plaintiff alleged that on September 11, 2013, defendant "hit me really hard in my chest." (*Id.*). Plaintiff alleged that the incident occurred around 4:30 p.m. (*Id.*). Plaintiff disputed findings by Institutional Inspector McGlothen and alleged she had not conducted a proper investigation. (*Id.*).

### B. Defendant's motion for summary judgment

Defendant alleges it is undisputed that he applied no physical force of any kind against plaintiff; even accepting plaintiff's allegations that defendant used physical force against him, there is

no evidence of even a *de minimis* injury and thus no objective evidence of excessive force; and absent more than a *de minimis* physical injury, dismissal of plaintiff's Eighth Amendment claim is required pursuant to 42 U.S.C. § 1997e(e).

In response, plaintiff alleges that he reported to medical staff at WCI that he was assaulted by "staff" on September 11, 2013, but the medical staff ignored him and he was never seen by the medical staff for the assault. (Doc. 62 at 3). Plaintiff alleges he complained to the Chief Inspector about a lack of medical treatment following the assault. (*Id.* at 2). Plaintiff also alleges that he did not submit a use of force form and a grievance form until October 15, 2013, over one month after the alleged assault, because Institutional Inspector McGlothen told plaintiff to submit the forms at that time and would not allow plaintiff to file these forms at an earlier time. (*Id.* at 1-2).

C. **Summary Judgment Standard**

A motion for summary judgment should be granted if the evidence submitted to the Court demonstrates that there is no genuine issue as to any material fact and that the movant is entitled to summary judgment as a matter of law. Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). "[A] party seeking summary judgment . . . bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp.*, 477 U.S. at 323. See also *Guarino v. Brookfield Township Trustees*, 980 F.2d 399, 405 (6th Cir. 1982). The movant bears the burden of demonstrating that there are no genuine issues for trial. See *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

The party opposing a properly supported motion for summary judgment "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248 (quoting *First Nat'l Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253 (1968)). In response to a properly supported summary judgment motion, the non-moving party "is required to present some significant probative evidence which makes it necessary to resolve the parties' differing versions of the dispute at trial." *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987) (quoting *First Nat'l Bank*, 391 U.S. at 288-89). Although the non-movant need not cite specific page numbers of the record in support of its claims or defenses, "the designated portions of the record must be presented with enough specificity that the district court can readily identify the facts upon which the non-moving party relies." *Guarino*, 980 F.2d at 405 (citing *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989)).

Because plaintiff is a pro se litigant, his filings are liberally construed. *Spotts v. United States*, 429 F.3d 248, 250 (6th Cir. 2005) (citing *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (stating that the Court holds pleadings of pro se litigants to less stringent standards than formal pleadings drafted by lawyers)); *Boswell v. Mayer*, 169 F.3d 384, 387 (6th Cir. 1999) (pro se plaintiffs enjoy the benefit of a liberal construction of their pleadings and filings). However, a party's status as a pro se litigant does not alter the duty on a summary judgment motion to support the party's factual assertions with admissible evidence. *Maston v. Montgomery Cnty. Jail Med. Staff Pers.*, 832 F. Supp.2d 846, 851-52 (S.D. Ohio 2011) (citing *Viergutz v. Lucent Techs., Inc.*, 375 F. App'x 482, 485 (6th Cir. 2010)). When opposing a motion for summary judgment, a pro se party cannot rely on allegations or denials in unsworn filings. *Id.* (citing *Viergutz*, 375 F. App'x at 485).

10

### D. The law governing an Eighth Amendment excessive force claim

The right at issue in this case is the right to be free from the use of excessive force by a prison official. A convicted prisoner's right to be free from the use of excessive force by a prison official is governed by the Eighth Amendment. *Whitley v. Albers*, 475 U.S. 312, 327 (1986). An Eighth Amendment claim has both an objective and subjective component. *Santiago v. Ringle*, 734 F.3d 585, 590 (6th Cir. 2013) (citing *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001)). The subjective component focuses on "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Cordell v. McKinney*, 759 F.3d 573, 580 (6th Cir. 2014) (quoting *Hudson v. McMillian*, 503 U.S. 1, 7 (1992)). In making this inquiry, the Court should consider the need for the use of force; the relationship between that need and the type and amount of the force used; the threat reasonably perceived by the official; the extent of the injury inflicted; and any efforts made to temper the severity of a forceful response. *See Hudson*, 503 U.S. at 7; *Whitley*, 475 U.S. at 319-321. The inmate is not required to suffer a serious injury, but the extent of his injuries may be considered in determining whether the force used was wanton and unnecessary. *Hudson*, 501 U.S. at 7. "While the extent of a prisoner's injury may help determine the amount of force used by the prison official, it is not dispositive of whether an Eighth Amendment violation has occurred." *Cordell*, 759 F.3d at 580-81 (citing *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010). "When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated . . . [w]hether or not significant injury is evident. Otherwise, the Eighth Amendment would permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury." *Id.* (quoting *Hudson*, 503 U.S. at 9). The objective component requires the "pain inflicted to be 'sufficiently serious' to offend

11

'contemporary standards of decency.'" *Id.* (citing *Williams v. Curtin*, 611 F.3d 380, 383 (6th Cir. 2011)).

### E. Defendant is entitled to summary judgment on plaintiff's Eighth Amendment claim.

The evidence of record, including the affidavits submitted by defendant, the administrative records, and plaintiff's sworn deposition testimony, present widely varying accounts of the facts giving rise to this lawsuit. Defendant argues that the Court should not adopt plaintiff's version of the facts for purposes of ruling on the summary judgment motion because plaintiff has given contradictory statements about when defendant hit him in the chest and if and when he sought medical treatment. (Doc. 58 at 6). However, the cases defendant relies on for its argument that plaintiff's version of the facts should be disregarded for summary judgment purposes do not support defendant's argument. Each of those cases involved situations where indisputable evidence foreclosed a reasonable jury from accepting the plaintiff's side of the story. *See Griffin v. Hardrick*, 604 F.3d 949, 954-55 (6th Cir. 2010) (plaintiff's version of events was blatantly contradicted by videotape evidence); *Kowolonek v. Moore*, 463 F. App'x 531, 539 (6th Cir. 2012) (patent weaknesses and blatant contradictions in the evidence precluded a finding that any of the defendants was the officer who used a taser on the plaintiff)). Here, although plaintiff's deposition testimony and administrative filings are not entirely consistent, defendant's argument would have this Court ignore sworn deposition testimony provided by plaintiff which contradicts defendant's version of the facts in key areas. Contrary to defendant's argument, it is not the Court's role to resolve such conflicts in the evidence and assess plaintiff's credibility at the summary judgment stage. *See Cordell*, 759 F.3d at 587 (district court erred by failing to accept plaintiff's allegations made under oath in deposition and by assessing whether testimony was believable; plaintiff alleged he had debilitating injuries and the

12

hospital records did not contradict his assertions) (citing *EEOC v. Ford Motor Co.*, 752 F.3d 634, 642 n. 3 (6th Cir. 2014)). Such credibility issues are for the trier of fact to resolve. *Id.* (citing *Ford Motor Co.*, 752 F.3d at 642 n. 3). Nonetheless, the Court finds that while it must accept as true for summary judgment purposes plaintiff's sworn deposition testimony that defendant used force against him on the date in question, plaintiff has not produced evidence to show the force used by defendant was more than *de minimis* so as to support an Eighth Amendment claim.

At his December 2014 deposition, plaintiff testified that defendant used force against him twice within the space of an hour on September 11, 2013. Plaintiff testified that defendant punched him "hard" on the chest at approximately 4:15 p.m. during "day room" while defendant was on the range and plaintiff was outside of his cell. (*Id.* at 28-29). Plaintiff testified that defendant used force against him a second time at approximately 5:05 p.m. after day room was over. (*Id.* at 36-38). Plaintiff testified that this incident occurred inside his cell after he began hitting the cell door because he wanted to see the medical staff. (*Id.* at 37-38). Plaintiff testified that defendant opened the cell door, yelled "I'll beat your fucking ass," and pushed plaintiff back into his bed. (*Id.*). Although plaintiff's sworn deposition testimony is not consistent in all respects and differs from the accounts he provided in his administrative complaints, if accepted as true, the deposition testimony nonetheless permits a finding that defendant used force against plaintiff on September 11, 2013, by punching plaintiff "hard" on his chest and later "push[ing him] back into [his] bed."[3] (*Id.* at 29, 37).

---

[3] Plaintiff made no mention of the second use of force incident in either the Notification of Grievance or the Inmate Use of Force Statement dated October 15, 2013, one month after the incident. (Doc. 11 at 1, 2). Plaintiff referenced only the blow to the chest in both complaints. Plaintiff alleged in the Notification of Grievance that at approximately 4:15 p.m. on September 11, 2013, defendant hit him in the chest "real hard" when plaintiff was out of his cell for day room and defendant was on the range. (*Id.* at 1). Plaintiff stated in the Inmate Use of Force Statement he completed the same date that defendant hit him in the chest for no reason and plaintiff listed the time of the incident as 7:30 p.m. (*Id.* at 2).

13

Nonetheless, the Court's analysis of plaintiff's excessive force claim does not end there. Not "every malevolent touch by a prison guard gives rise to a federal cause of action." *Wilkins*, 559 U.S. at 37 (quoting *Hudson*, 503 U.S. at 9). A *de minimis* use of physical force does not violate the Eighth Amendment's prohibition against cruel and unusual punishment "provided that the use of force is not of a sort repugnant to the conscience of mankind." *Id.* at 37-38 (quoting *Hudson*, 503 U.S. at 9). "An inmate who complains of a 'push or shove' that causes no discernible injury almost certainly fails to state a valid excessive force claim." *Id.* at 38 (citing *Hudson*, 503 U.S. at 9) (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973)).

Plaintiff's deposition testimony, together with the remaining evidence of record, does not support a finding of more than a *de minimis* use of physical force. Nor does the evidence support a finding that the force used was of a sort "repugnant to the conscience of mankind." *Wilkins*, 559 U.S. at 37-38 (quoting *Hudson*, 503 U.S. at 9). There is no evidence that plaintiff suffered a discernible injury as a result of defendant's use of force. Plaintiff does not allege that he suffered any injury whatsoever as a result of being pushed into his bed. Nor does plaintiff allege that the blow to his chest left any marks, bruises, or lacerations. In fact, plaintiff was examined by a nurse the following day after he was involved in a fight and sprayed with "OC spray" or "pepper spray." (Doc. 58-1, Exh. C-72). The Medical Exam Report the nurse completed documents that plaintiff did not complain of any injury at that time and he had "no visible injury." (*Id.*). Further, plaintiff testified at his deposition that he was seen by Dr. Timothy Heyd a few days after defendant punched him in the chest and Dr. Heyd informed plaintiff that he saw no markings or bruises of any types and x-rays were not necessary. (Doc. 57-1 at 60). Plaintiff did testify at his deposition that the middle of his chest hurt where defendant hit him and that he has "been having chest pains" and pain every time he

14

inhales. (Doc. 57-1 at 42, 57). However, there is no evidence that plaintiff suffered a chest injury or chest pain of sufficient severity to require any type of medical attention or treatment. (*See* Doc. 58-1, Roseanna Clagg, R.N., Declaration, ¶ 5; *Id.*, Exhs. C-41 through C-129- plaintiff's medical records for the period September 2013 to January 2015). The interdisciplinary progress notes, nursing records and chronic care clinic records related to plaintiff's medical care over this 16-month period contain no entries documenting complaints or treatment of a chest injury resulting from a blow to the chest. (*Id.*, ¶¶ 5, 6; Exhs. C-41 through C-129). Plaintiff made sporadic complaints of chest pain in November 2013, January 2014, December 2014, and January 2015; however, there is nothing in the medical reports that links these complaints to a blow to the chest or any other use of force by defendant. (*Id.*, Exhs. C-39, C-40, C-46, C-84). To the contrary, plaintiff reported in January 2014 that he had just begun experiencing chest pain with deep breaths that day, he was assessed as displaying a misuse of medical services, and he received a rule infraction for lying. (Doc. 58-1, Exh. C-84).

Finally, there is no evidence showing that plaintiff ever complained about a denial of medical treatment for injuries suffered as a result of a blow to the chest. Plaintiff concedes he did not complain of a denial of medical treatment in the Notification of Grievance he filed on October 15, 2013. (Doc. 57-1 at 56; Doc. 11 at 1). Plaintiff testified at his deposition that he complained of a denial of medical care in his Appeal to the Chief Inspector (Doc. 57-1 at 56), but the Appeal makes no mention of this issue. (Doc. 11 at 4). There is no other evidence that shows despite his frequent use of the Ohio Department of Rehabilitation and Correction (ODRC) grievance system, plaintiff filed any other complaints or grievances about the medical treatment he received or a lack of medical

15

treatment for a blow to the chest or any other injury resulting from defendant's use of force. (Doc. 58-1, Exh. B-1, Declaration of Mark E. Stegemoller, WCI Warden's Administrative Assistant, ¶ 6).[4]

Thus, accepting as true plaintiff's sworn deposition testimony that defendant used force against him on September 11, 2013, by punching him hard in the chest and pushing him back into his bed, plaintiff has nonetheless failed to produce sufficient evidence to establish his Eighth Amendment claim. The evidence shows that defendant's actions constituted a *de minimis* use of force which caused plaintiff to suffer no discernible injury requiring medical treatment of any kind. Accordingly, there is no genuine issue of material fact and defendant is entitled to summary judgment on plaintiff's Eighth Amendment claim as a matter of law.

Defendant argues that because plaintiff has failed to make a showing of more than a *de minimis* physical injury, his Eighth Amendment claim must be dismissed pursuant to the Prison Litigation Reform Act, 42 U.S.C. § 1997e(e). The PLRA provides, in relevant part, that: "No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury. . . ." The physical injury required under § 1997e(e) for a claim under 42 U.S.C. § 1983 "need not be significant, but it must be more than *de minimis* for an Eighth Amendment claim to go forward." *Jarriett v. Wilson*, 162 F. App'x 394, 401 (6th Cir. 2005) (collecting cases). Liberally construing plaintiff's allegations, the chest pain of which he complains constitutes nothing more than a *de minimis* injury for purposes of § 1997e(e). *Id.* ("swelling, pain, and cramps" which plaintiff did not mention to medical staff for several days and weeks and which produced no medical findings constituted "nothing more than a *de minimis* injury for purposes of § 1997e(e)."). Accordingly,

---

[4] According to the administrative records, plaintiff has filed 75 Informal Complaints, 14 Notifications of Grievances, and eight grievances directly with the Chief Inspector's Office during his incarceration under the ODRC. (*Id.*).

16

pursuant to § 1997e(e), defendant is entitled to summary judgment in his favor insofar as plaintiff seeks damages for mental or emotional injury.

## IT IS THEREFORE ORDERED THAT:

1. Plaintiff's motions to appoint counsel/stay proceedings (Docs. 60, 61, 63, 67) are **DENIED**.

2. Plaintiff's motion to be brought to Court (Doc. 65) is **DENIED.**

3. Plaintiff's motion for extension of time (Doc. 66) is **DENIED** as moot.

## IT IS THEREFORE RECOMMENDED THAT:

1. Defendant's motion for summary judgment be **GRANTED**.

2. The Court certify pursuant to 28 U.S.C. § 1915(a)(3) that for the foregoing reasons an appeal of any Court Order adopting this Report and Recommendation would not be taken in good faith. *See McGore v. Wrigglesworth*, 114 F.3d 601 (6th Cir. 1997).

Date: 4/29/15

Karen L. Litkovitz
United States Magistrate Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

BILLY ROGERS,
    Plaintiff,

vs.

OFFICER SHOSTAK, et al.,
    Defendants.

Case No. 1:14-cv-213

Barrett, J.
Litkovitz, M.J.

### NOTICE

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. See *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).